UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRIZENT DENISE BROWN, | No. 2:17-cv-00950-AC |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for disability insurance benefits June 3, 2013, and supplemental security income June 24, 2013. Administrative Record ("AR") 208-19.[2] The disability onset date for both applications was alleged to be July 10, 2007. Id. at 77. The applications were disapproved initially and on reconsideration. Id. at 133-54. On July 9, 2015, ALJ Peter F. Belli presided over the video hearing on plaintiff's challenge to the disapprovals. AR 38-76 (transcript). Plaintiff was present and testified at the hearing. Id. Plaintiff was represented by Danielle Duarte, Esq., at the hearing. Id. Impartial Vocational Expert ("IVE") James Graham was also present. Id.

On September 16, 2015, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 14-32 (decision). On March 2, 2017, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 6-8 (decision).

Plaintiff filed this action May 5, 2017. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 8, 10. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 22 (plaintiff's summary judgment motion), 25 (Commissioner's summary judgment motion), 26 (plaintiff's reply).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1967, and accordingly was 39 years old on the alleged disability onset date, making her a "younger person" under the regulations. AR 30; see 20 C.F.R. §§ 404.1563(c), 416.963(c) (same). Plaintiff has a limited education and is able to communicate in English. Id.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the

---

[2] The AR is electronically filed at ECF Nos. 13-3 to 13-15 (AR 1 to AR 721).

Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla" but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . .'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

////

////

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since July 10, 2007, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. [Step 2] The claimant has the following severe impairments: back sprain/strain; degenerative joint disease of both knees; and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [Preparation of Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and or carry, push and or pull, 20 pounds occasionally and 10 pounds frequently; she can sit for eight hours in an eight hour day, with normal breaks; she can stand and or walk for eight hours in an eight hour day, with normal breaks; she can never climb ladders, ropes, and scaffolds; she can occasionally crawl; she can frequently stoop, crouch, and kneel; and she can frequently operate foot pedals.
>
> 6. [Step 4] The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. [Step 5] The claimant was born [in 1967] and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. [Step 5, continued] The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. [Step 5, continued] Transferability of job skills is not an issue

|   |   |
|---|---|
| 1 | because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968). |
| 2 |   |
| 3 | 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 4 |   |
| 5 | 11. The claimant has not been under a disability, as defined in the Social Security Act, as to the claimant's Title II application, from July 10, 2007, through the claimant's date last insured of March 31, 2009, and has also not been under a disability, as defined in the Social Security Act, under the claimant's Title XVI application from the protected filing date of June 24, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |
| 6 |   |
| 7 |   |
| 8 |   |

AR 16-31.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 31.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by improperly discrediting: (1) the opinion of treating physician Dr. Charles McCrory; (2) plaintiff's testimony; and (3) plaintiff's sons' lay witness testimonies. ECF No. 22 at 4.

### A. The ALJ Properly Weighed the Opinion of Dr. McCrory

The ALJ was justified in giving Dr. McCrory's testimony reduced weight. Dr. McCrory treated plaintiff with medication refills and spinal manipulation from July 2012 through at least 2015 for complaints related to knee and back pain. AR 21-22, 506-537, 601, 657-716. Dr. McCrory's treatment regimen remained consistent throughout his treatment of plaintiff. Id. Dr. McCrory completed a Physical Medical Source Statement, dated July 6, 2015, in which he opined that the claimant can sit for about two hours in an eight hour day; can stand and or walk for about two hours in an eight hour day; would need to be able to shift positions at will; would need periods of walking around during an eight hour day, every 30 minutes for five minutes each time; would need two to three unscheduled breaks during a working day, for five minutes each time; does not need an assistive device; can rarely lift and or carry less than ten pounds, and never any weight occasionally or frequently; can rarely twist, stoop, bend, or climb stairs; can never

6

crouch, squat, or climb ladders; has no manipulative limitations; would likely be off task 25% or more of the workday; is capable of low stress work; and would likely, on average, be absent more than four days per month. AR 717-21.

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons. Id. If a treating physician's opinion is contradicted by another doctor, it may be rejected for specific and legitimate reasons, supported by substantial evidence in the record. Id. The "clear and convincing" standard applies to rejections of a treating physician's ultimate conclusions. Id. Here, the ALJ gave clear and convincing reasons for assigning little weight to Dr. McCrory's medical assessment[3]: (1) Dr. McCrory's opinion was inconsistent both internally and with the record as a whole; (2) the treatment notes from Dr. McCrory indicate that plaintiff's symptoms improved; and (3) the exertional and postural limitations Dr. McCrory provided in his opinion were supported by few objective medical findings. AR 26.

First, the ALJ justifiably concluded that Dr. McCrory's opinion was inconsistent internally and with the record as a whole. Plaintiff's argues that Dr. McCrory's opinion was consistent with his treatment notes and the record, and that Dr. McCrory's opinion should have received more weight since he had an intimate knowledge of plaintiff's conditions through his "significant treatment" history with plaintiff. ECF No. 22 at 11-19. However, the ALJ noted that contrary to Dr. McCrory's opinion, his own treatment records show an improvement in plaintiff's symptoms. AR 506-37, 708-16. In addition, the ALJ found that Dr. McCrory provided a routine and conservative treatment consistent with the whole record, which "indicat[ed] that plaintiff has

---

[3] Dr. McCrory's medical assessment is located at AR 717-721.

had mild findings and received routine and conservative treatment." AR 26. The ALJ noted that despite this long-term improvement and conservative treatment, when Dr. McCrory was told that plaintiff was trying to obtain Social Security Disability during plaintiff's May 21, 2014 visit, Dr. McCrory's stated t in his treatment notes that plaintiff had significant disability. AR 704-07. Even then, Dr. McCrory's treatment plan did not change. AR 506-37. For these reasons, the ALJ was justified in finding that the treatment Dr. McCrory provided plaintiff, and his contemporaneous notes, were inconsistent with his opinion on disability. The internal and external inconsistencies identified by the ALJ constitute clear and convincing reasons for discounting Dr. McCrory's opinion.

The court rejects plaintiff's argument that she did not receive "minimal" treatment fails. Plaintiff asserts that she received consistent ongoing care . . . [and] traditional, conservation medication management, as well as chiropractic care from Dr. McCrory thereby optimizing her treatment." ECF No. 22 at 13. Plaintiff's assertion does not undermine the ALJ's finding that plaintiff's care was routine and conservative, "consisting of medical refills and chiropractic spinal manipulation." AR 25-27. The ALJ notes "the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant has not undergone any surgeries . . . nor have any surgeries been recommended." AR 25. Plaintiff's assertion actually supports the ALJ's finding that Dr. McCrory's opinion regarding disability did not match the whole record, which "indicat[ed] that plaintiff has had mild findings and received routine and conservative treatment." AR 26.

Second, the ALJ justifiably concluded that the treatment notes from Dr. McCrory indicate that plaintiff's symptoms improved, in contrast to his ultimate conclusions regarding her disability. Although plaintiff asserts that she has "good days and bad," ECF No. 22 at 18, this claimed fluctuation in condition is not supported by Dr. McCrory's treatment notes and prescriptions. Overall, Dr. McCrory's treatment notes show a marked improvement in plaintiff's condition over time. AR 23, 676, 679, 683, 689, 693, 696, 700. His prescriptions remained the same even on visits where his treatment notes report that plaintiff was experiencing increased pain. AR 704-07. As the ALJ noted, at times Dr. McCrory even indicated that the claimant is

"doing quite well" and at other times that the claimant's spinal spasm was resolved. AR 26, 569, 679, 708. Because the ALJ made his determination by pointing to Dr. McCrory's treatment notes over time, the ALJ used substantial evidence and provided clear and convincing reasoning in coming to his conclusion.

Lastly, the ALJ justifiably concluded that the exertional and postural limitations Dr. McCrory provided in his opinion were supported by few objective medical findings. Plaintiff asserts that radiological evidence provides further confirmation of her knee and back impairment. AR 358-60. Although the radiological evidence confirms the existence of impairments, it does not support the extreme limitations that Dr. McCrory endorsed in his opinion. The imaging studies revealed no fractures, and degenerative changes within the medial joint space, Id., which Dr. McCrory himself identified in his treatment notes as "very mild spondylosis . . . [and the] [s]acroiliac joints are normal," AR 529. Plaintiff argues that "[t]he exact functional meaning of the findings is debatable," ECF No. 22 at 19. As a preliminary matter, the court find the radiological record speaks for itself and provides a clear and convincing basis to reject Dr. McCrory's disability opinion. Nonetheless, the court notes that to the extent there are various interpretations available, the ALJ's determination of the facts is to be upheld. Thomas, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Plaintiff also argues that her extreme obesity exacerbated her pain, and the ALJ "did not specify how or to what extent her morbid obesity impacted her functional abilities." ECF No. 22 at 19-21 (citing AR 24). However, a review of the record does not support this contention. The ALJ did in fact acknowledge the issue of plaintiff's obesity; indeed, he found it to be a severe impairment and specifically noted that he "considered the claimant's weight, including the impact on her ability to ambulate as well as her other body systems, within the functional limitations determined [in the order]." AR 17, 24. Dr. McCrory's notes report that plaintiff could walk without difficulty and as plaintiff improved, his reports regarding her movement did as well. AR 510, 515, 673, 676, 683, 696, 708. Dr. McCrory's treatment notes did not identify any functional limitations attributed to plaintiff's obesity. Plaintiff's allegation is unsupported by the record, and

9

the ALJ did not err in determining that plaintiff did not have functional limitations related to obesity. For these reasons, the ALJ properly weighed Dr. McCrory's opinion, and did not err in assigning it a reduced weight.

Finally, plaintiff argues that the ALJ improperly relied on non-examining state agency reviewers Drs. DeSouza and Dr. Dipsia. ECF No. 22 at 20-21. The court finds no error. Dr. L. DeSouza, M.D. and Dr. A. Dipsia, M.D. are state agency medical consultants who each provided a Medical Evaluation and Case Analysis. AR 27, 83-90, 113-18. First, the ALJ specifically *discounted* Dr. DeSouza and Dr. Dipsia's opinions where they contradicted the opinion of Dr. McCrory. AR 27. Further, the ALJ appropriately granted the non-examining State agency reviewers' findings significant weight for reasons including consistency with the record as a whole as discussed above, including the x-ray data and the record of conservative treatment and good ambulation apparent from Dr. McCrory's notes. Id. For these reasons, the ALJ's reliance on the non-examining state agency reviewers does constitute error affecting the ALJ's evaluation of Dr. McCrory's opinion.

### B. The ALJ Properly Discounted Plaintiff's Testimony

The ALJ did not err in discounting plaintiff's subjective testimony. Plaintiff testified that she cannot walk or stand due to constant pain in her knees and back. AR 253. She has alleged that she cannot bathe, cook, clean house, or do anything on her own, and cannot be alone because she cannot care for herself. AR 56-59, 254-55. Plaintiff claims she watches "TV all day long and all night," and that she "can't work or do anything now." Id. Plaintiff's adult sons, Tim Whitmore and Jamar Brown, each submitted a third-party function report largely echoing plaintiff's asserted limitations. AR 262-70, 279-87.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged . . . [plaintiff] need only show that it could reasonably have caused some degree of the symptom." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. Id. If

there is objective medical evidence of impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." Id. (internal citations omitted). The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.1996). Work records, physician and third-party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.1997).

The ALJ properly discredited plaintiff's testimony on the grounds that: (a) the record has shown at times that plaintiff has been able to increase her activities of daily living; (b) the claimant has not received the type of medical treatment one would expect for a totally disabled individual; (c) claimant's work history prior to her alleged onset date raised a question as to whether her continuing unemployment is actually due to medical impairments; and (d) plaintiff has continued to smoke or be exposed to secondhand smoke against direct medical advice. AR 24. It might have been improper for the ALJ to rely solely on plaintiff's continued exposure to secondhand smoke, her occasional bursts of increased daily activities, or inferences from her sporadic work history to discredit her. However, the ALJ did not rest his credibility determination solely on those factors. Rather, the ALJ's made the specific finding, which is well supported by the record, that plaintiff's history of medical treatment is inconsistent with her testimony. This is a legitimate basis for an adverse credibility determination.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)). Here, the ALJ found that plaintiff had received mostly routine and conservative treatment of medical refills and chiropractic spinal

11

manipulation – medical treatment one would not "expect for a totally disabled individual."  AR 24.  The conservative, routine treatment provided throughout plaintiff's alleged period of disability (AR 657-716, 717-721), which consisted almost entirely of medication and spinal manipulation, stands in sharp contrast to her testimony of near total incapacity (AR 56-60).  Indeed, Dr. McCrory noted that her symptoms are well controlled by medication, remarking that plaintiff "describes her subjective back pain is 5/10 without medication, 1-2/10 pain with medication."  AR 679.  Because the ALJ made the specific and well-supported finding that plaintiff's record of conservative and minimal treatment was inconsistent with her subjective testimony, and because this finding is sufficient to discount plaintiff's subjective testimony, any other errors made in the evaluation of plaintiff's subjective testimony were harmless and not grounds for reversal.

Plaintiff further argues that the ALJ erred in discrediting plaintiff because lay witness testimony supported her complaints.  The ALJ did not err in discounting the lay witness's testimonies.  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work."  Stout, 454 F.3d at 1053 (citing Dodrill v. Shalala, 12 F.3d at 919).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  If lay testimony describes the same limitations as plaintiff's testimony, the ALJ's reasons for rejecting plaintiff's testimony will apply with the same force to the lay testimony.  See Molina, 674 F.3d at 1122 (failure to discuss lay testimony was deemed harmless because the lay testimony did not describe limitations beyond plaintiff's testimony, which the ALJ discussed and length and rejected based on well-supported, clear and convincing reasons); Franklin v. Astrue, No. ED CV 09-01117-VBK, 2010 WL 330239, at *2 (C.D. Cal. Jan. 21, 2010) (the ALJ provided specific and legitimate reasons when it discounted lay witness testimony because "they were a mere repetition of subjective complaints already testified to by [p]laintiff, whose own credibility had been depreciated by the ALJ); Whitten v. Colvin, 642 F. App'x 710, 713 (9th Cir. 2016) ("The ALJ [] gave germane reasons for giving little weight to the lay witness testimony . . .

////

because their statements described essentially the same limitations as [plaintiff]'s own testimony.").

Here, the ALJ rejected the lay witness testimony of plaintiff's sons Tim Whitmore and Jamar Brown because they seemed to be a repetition of statements made by claimant, were not supported by objective findings in the medical evidence of record, and there were discrepancies between the statements of the two lay witnesses. AR at 25-26. Plaintiff contests these grounds for discrediting the lay witness testimony, arguing that "the medical evidence, including the evidence of [plaintiff's] extreme obesity, was thoroughly consistent with the third party statements of her two sons regarding her daily activities and the impact of her impairments on their mother's life." ECF No. 22 at 26-27.

The ALJ did not err in discounting the lay witness testimony because the witnesses' statements described essentially the same limitations as plaintiff's own testimony. The three testimonies are identical in describing plaintiff's day-to-day activity and attributing plaintiff's limited activity to her back and knee pain, anxiety, and depression. AR 253-61; 262-70; 279-87. The only real difference is that plaintiff and Timothy Whitmore both testified that plaintiff's cane was not prescribed by a doctor, while Jamar Brown states that it was. AR 259, 268, 285. The legitimate reasons the ALJ relied on to discount plaintiff's testimony applies equally to the lay witness testimony. Accordingly, there was no error

## VII. CONCLUSION

As discussed above, the ALJ did not err in discounting Dr. McCrory, plaintiff, or the lay testimony of plaintiff's sons.

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 22), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 25), is GRANTED;

////

////

////

13

3. The Clerk of the Court shall enter judgment for the Commissioner, and close this case.

DATED: August 10, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE